(No. 2772— ▇▇▇▇▇▇▇▇)

AURORA, ELGIN AND FOX RIVER ELECTRIC COMPANY, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 10, 1937.*

ALSCHULER, PUTNAM & JOHNSON, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

This claim was filed by the Aurora, Elgin and Fox River Electric Company, a corporation, on December 16, 1935, with the clerk of this court, alleging that it is a railroad corporation within the State of Illinois, and maintains its tracks and operates its trains within Kane County, and served the Elgin State Hospital, a State institution, by maintaining tracks and operating trains to the siding of that hospital.

It is also alleged that on the 1st day of February, 1929, a contract was entered into between the then manager of the Elgin State Hospital, who was duly authorized to enter into contracts on behalf of the State, which contract was known in railroad parlance as an "Average Agreement" and is attached to the petition filed in this cause, made a part thereof and marked "Exhibit A". This agreement provided the rate for charges for demurrage of railroad cars which were to be in the future delivered to the Elgin State Hospital by the claimant; that the consideration for the signing of said "Average Agreement" by the then managing officer of the Elgin State Hospital was the adherence by the Aurora, Elgin and Fox River Electric Company, the claimant herein, to the National Car Demurrage Rules and Charges of The American Railway Association, and a copy of the applicable sections is attached to the petition filed in this cause, made a part thereof and marked "Exhibit B". It is also charged that this agreement was in force and effect throughout the

month of June, 1935, and during the said month of June, 1935, the Elgin State Hospital received large shipments of coal by way of various steam railroads, which railroads delivered their cars to the claimant for delivery to the Elgin State Hospital, and during this month of June, 80 cars of coal were delivered by the claimant to the Elgin State Hospital. (A Bill of Particulars is attached to the petition, which shows the car number, the date of delivery, the date they were returned, the total days, the free days, the debit days, credit days and excess. This Bill of Particulars shows a total debit days of 160, with 12 credit days, making a total of 148 days, at $2.00 per day, or $296.00. In excess, there were 7 debit days at $5.00 each, or the further sum of $35.00, making a total of $331.00. This is the sum computed under the plans set forth in the "Average Agreement" and the National Car Demurrage Rules and Charges of the American Railway Association.) Rule 9, Item 540, Section A of the Car Demurrage Rules and Charges provides that:

"One credit will be allowed for each car released within the first twenty-four (24) hours of free time. After the expiration of forty-eight (48) hours' (96 hours on cars subject to Rule 8, Section A, Paragraph 2, Page 45) free time, one debit per car per day or fraction of a day, will be charged for each of the first four days. In no case shall more than one credit be allowed on any one car, and in no case shall more than four credits be applied in cancellation of debits accruing on any one car. When a car has accrued four debits, a charge of $5.00 per car per day, or fraction of a day, will be made for all subsequent detention and will apply on all subsequent Sundays and legal holidays, including a Sunday or holiday immediately following the day on which the fourth debit begins to run."

It is further provided that:

"At the end of the calendar month the total number of credits will be deducted from the total number of debits and $2.00 per debit will be charged for the remainder. If the credits equal or exceed the debits, no charge will be made for the detention of the cars except as otherwise provided in Section A for detention beyond the fourth debit day, and no payment will be made by this railroad on account of such excess of credits; nor shall the credits in excess of the debits of any one month be considered in computing the average detention for another month."

There are other provisions concerning the rules applicable hereto.

The respondent admits that such services were rendered by the claimant. An offer of compromise for the sum of $150.00 is shown to have been made but refused by the claim-

ant. The evidence shows in a statement from Charles F. Read, managing officer, submitted to Mr. A. L. Bowen, Director, under date of December 30, 1935, that the statement of days cars of screenings were on the switch track is correct, but the total charges are excessive because of bunching by the Illinois Central Railroad Company; that on June 18, 1935, 22 cars were delivered, but were shipped as follows: 5 cars, June 12th; 5 cars, June 13th; 8 cars, June 14th, and 4 cars, June 15th. This letter further states that they could not have avoided a demurrage charge, but these charges could have been considerably reduced if deliveries had been more evenly distributed. It also stated that the weather was very rainy and they were unable to keep their patients at the job of unloading as steadily as they had expected when ordering in the coal.

In another letter from Mr. Bowen to Mr. Read under date of January 3, 1936, he acknowledged receipt of the letter of December 30, 1936, and quoted that provision of Mr. Read's letter of December 30, to the effect that "total charges were excessive because of bunching by the Illinois Central Railroad. * * * While we could not have avoided a demurrage charge, same could have been considerably reduced if deliveries had been more evenly distributed". Mr. Read was then asked by Mr. Bowen: "When the Elgin State Hospital ordered this coal in anticipation of a strike was the shipping company or the railroad given any instructions concerning the number of cars which could be handled daily? In other words, were the shipping concerns responsible for sending in several cars of coal which could not be unloaded and of subsequently entering a claim for demurrage; or, did the State Hospital fail to specify the amount of coal which should be delivered at stated intervals?" In a letter dated January 10, 1936, from Mr. Read to Mr. Bowen, it is stated: That their contract for coal for this period was divided between five different mines at five different locations in Southern Illinois, and each mine was instructed to ship two cars per day. He also stated that they were able to unload ten cars per day if weather conditions were favorable. He also stated that the mines shipped as instructed, but being located at different points, there was no way for the railroads to entirely control the rate of delivery to the hospital, and he

closed his letter by this statement: "However, there was no reason why twenty-two cars should be delivered on any one day except the fault of the railroads".

We cannot see how there could be any fault of claimant in the statement of facts tendered. The shipments did not arise on the line of the claimant, and it does not appear that the railroads ever received any notice to the effect that the hospital could only handle ten cars. As a matter of fact, it appears that the railroads were not so notified. As stated in Mr. Read's letter: "The mines shipped as instructed, but being located at different points, there was no way for the railroads to entirely control the rate of delivery to us."

It appears that a strike in the coal fields was being anticipated, and for that reason, the then managing officer of the Elgin State Hospital, very properly laid in an extra supply of coal. In this, we feel that he was entirely justified under the circumstances. No doubt, many other users of coal were doing the same thing. Mr. Read was acting as a competent, careful, public officer should act under such circumstances. The railroads, including claimant, fully performed their duties. The only excuse for not unloading the coal within the time provided by the rules and agreements entered into with the claimant, was the fact that the weather was rainy and they were unable to keep their patients at the job of unloading as steadily as they expected. Of course, this would not be any reason to justify denial of the claim. The claimant rendered the service and no objection is made to the charge. The charge is made for failure to empty the cars and return them into commerce.

We have repeatedly held that where it is conceded that a claimant rendered services and furnished supplies to the State, and has not been paid therefor because of the lapse of appropriation for the purpose, and the amount is unquestioned, and no laches appearing on part of claimant, an award will be made for such services and supplies. No sufficient reason appearing why we should not adhere to that rule, an award will be made in favor of the Aurora, Elgin and Fox River Electric Company, a corporation, with offices at 46 Fox Street, Aurora, Illinois, for the full amount of the claim, to wit: the sum of $331.00.